UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF LOUISIANA

CARTER PITRE                              CIVIL ACTION

VERSUS                                    NO. 06-4504

TETRA TECHNOLOGIES, INC., ET AL.          SECTION "R"(4)

### ORDER AND REASONS

Before the Court is cross claimant Linder Oil Company's motion for summary judgment. Also before the Court is defendants Eagle Consulting and Albert Bailey's motion for summary judgment. For the following reasons, the Court GRANTS Linder's motion and GRANTS Eagle Consulting's motion.

### I.   BACKGROUND

On April 5, 2002, defendant Tetra Applied Technologies, LLC ("Tetra Applied"), and third-party plaintiff Linder Oil Co. entered into an oil drilling contract wherein Tetra Applied agreed to furnish Linder with a drilling vessel, equipment, and personnel for the purpose of drilling offshore oil wells ("drilling contract"). Tetra Applied also entered into a general

services contract with defendant Eagle Consulting, LLC, pursuant to which Eagle provided "Company Man" services to Linder through Eagle's employee, defendant Albert Bailey. (*See* R. Docs. 27-13, 90-5 at ¶ 7.) It appears from the record that plaintiff Carter Pitre was employed by Tetra Applied[1] to work as a driller in service of the vessel TETRA RIG NO. 8, which he alleges was owned and/or operated by Tetra Applied and/or Tetra Technologies, Inc. ("Tetra Tech"). (*See* R. Doc. 60 at ¶¶ V, VI.) According to the complaint, Pitre sustained injuries during the course of his duties on August 28, 2004, when he "fell from the tower of the rig to the rig floor." (*Id.* at ¶ VIII.) At the time of the accident, Bailey was working aboard TETRA RIG NO. 8 as Linder's "Company Man." (*See* R. Doc. 60 at ¶ VII; R. Doc. 90-5 at ¶ 7; R. Doc. 90-3 at 38-39.)

Pitre initiated this seaman's action on August 22, 2006, asserting claims against Tetra Tech and Linder for negligence, unseaworthiness, and maintenance and cure. (*See* R. Doc. 1 at ¶¶ VII, VIII, XI.) Linder then filed a third-party complaint

---

[1] Although Pitre has alleged that he was employed by Tetra Technologies, Inc. (*see* R. Doc. 60 at ¶ VI), it appears that he was in fact employed by Tetra Applied, a separate corporate entity (*see* R. Doc. 47 at 2 n.1). Tetra Technologies and Tetra Applied have confused the matter by referring to themselves jointly as "Tetra." (*See* R. Doc. 89 at 1.) As discussed below, Pitre's apparent mistake is of no consequence for the present purposes.

against Tetra Applied, claiming that the drilling contract required Tetra Applied to defend and indemnify Linder with respect to Pitre's claims. (*See* R. Doc. 41.) On July 30, 2007, the Court dismissed Pitre's claims against Linder. (*See* R. Doc. 47.) On April 16, 2008, Pitre requested leave to file a supplemental and amending complaint, which the Court granted. (*See* R. Docs. 58, 60.) The amended complaint added negligence, unseaworthiness, and maintenance and cure claims against Tetra Applied, Bailey, and Eagle. (*See* R. Doc. 60 at ¶¶ V-XII.) Several of the defendants have also filed cross-claims against one another. (*See* R. Docs. 100, 102.)

Linder has now filed a motion for summary judgment with respect to its defense and indemnification claim against Tetra Applied. (R. Doc. 75.) In addition, Bailey and Eagle have filed a motion for summary judgment with respect to Pitre's claims against them. (R. Doc. 90.) Pitre has not opposed Bailey and Eagle's motion, but Tetra Applied and Tetra Tech filed a memorandum in opposition [three weeks after the hearing date]. (R. Doc. 103.) The Court now rules as follows.

## II.  LEGAL STANDARD

Summary judgment is appropriate when there are no genuine issues as to any material facts and the moving party is entitled

-3-

to judgment as a matter of law.  *See* FED. R. CIV. P. 56(c); *Celotex Corp. v. Catrett*, 477 U.S. 317, 322-323 (1986).  A court must be satisfied that no reasonable trier of fact could find for the nonmoving party or, in other words, "that the evidence favoring the nonmoving party is insufficient to enable a reasonable jury to return a verdict in her favor."  *Lavespere v. Niagara Mach. & Tool Works, Inc.*, 910 F.2d 167, 178 (5th Cir. 1990) (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986)).  The moving party bears the burden of establishing that there are no genuine issues of material fact.

If the dispositive issue is one on which the nonmoving party will bear the burden of proof at trial, the moving party may satisfy its burden by merely pointing out that the evidence in the record contains insufficient proof concerning an essential element of the nonmoving party's claim.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  The burden then shifts to the nonmoving party, who must, by submitting or referring to evidence, set out specific facts showing that a genuine issue exists.  *See Celotex*, 477 U.S. at 324.  The nonmovant may not rest upon the pleadings, but must identify specific facts that establish a genuine issue exists for trial.  *See id.* at 325; *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1996).

**III. DISCUSSION**

    **A.   Linder's Motion for Summary Judgment**

Linder argues that the drilling contract unambiguously requires Tetra Applied to reimburse it for (1) the costs Linder incurred while defending against Pitre's claims and (2) the attorney's fees and costs Linder incurred while seeking indemnity from Tetra Applied. Because the services performed under the drilling contract are "maritime in nature," *Exxon Corp. v. Central Gulf Lines, Inc.*, 500 U.S. 603, 612 (1991), interpretation of the contract's provisions is governed by federal maritime law. *See Corbitt v. Diamond M. Drilling Co.*, 654 F.2d 329, 332 (5th Cir. 1981). Unless the document is ambiguous, courts may not look beyond its written language to determine the intent of the parties. *Id.* at 332-33.

At the same time, indemnification provisions must be strictly construed. *Smith v. Tenneco Oil Co.*, 803 F.2d 1386, 1388 (5th Cir. 1986). Importantly, an indemnification provision is construed to cover losses "which reasonably appear to have been within the contemplation of the parties, but it should not be read to impose liability for those losses or liabilities which are neither expressly within its terms nor of such a character that it can be reasonably inferred that the parties intended to include them within the indemnity coverage." *Corbitt*, 654 F.2d

-5-

at 333.

With respect to Linder's claim for indemnity, the relevant provisions of the drilling contract provide:

> <u>903. [Tetra Applied's] Personnel</u>
>
> [Tetra Applied] shall be responsible for and hold harmless and indemnify [Linder] from and against all claims, demands and causes of action of every kind and character arising in connection herewith in favor of [Tetra Applied's] Personnel or [Tetra Applied's] invitees, on account of bodily injury, death or damage to property. ...
>
> <u>910. Indemnity Obligation</u>
>
> (a) The parties intend and agree that the phrase "be responsible for and hold harmless and indemnify" in Paragraphs ... 901 through 909 hereof mean that the indemnifying party shall release, indemnify, hold harmless and defend (including payment of reasonable attorney's fees and costs of litigation) the indemnified party from and against any and all claims, demands, causes of action, damages, judgments and awards of any kind or character, without limit and without regard to the cause or causes thereof ... .

(R. Doc. 75-3, at 23, 25). The contract, in plain and unambiguous language, requires Tetra Applied to "defend (including payment of reasonable attorney's fees and costs of litigation)" Linder against any claims "on account of bodily injury" brought by Tetra Applied's "Personnel" that arise in connection with the drilling contract. There can be no doubt that Pitre asserted a claim "on account of bodily injury" against Linder, that the claim arose in connection with the drilling

-6-

contract, and that Linder incurred attorney's fees and costs in defending the claim. Moreover, the contract defines Tetra Applied's "personnel" to include drillers, the position held by Pitre. (*See* R. Doc. 75-3 at 14, 33; *see also* R. doc. 57 at ¶ 4 (admitting in answer that Pitre was an employee of Tetra Applied); R. Doc. 90-3 at 31 ("Well, [Tetra Applied] hired me as a floorhand ... then a spot for a drilling job came open and they gave me the drilling job.").)

In its opposition, Tetra Applied argues that the contract "does not clearly and [un]ambiguously require the indemnitor to defend a claim of negligence on the part of [Linder's] representative, in this case Eagle Consulting, LLC and Albert Bailey." (R. Doc. 89 at 3.) But as Linder makes clear in its reply brief, it has "never asked Tetra to defend and indemnify Eagle Consulting ... ." (R. Doc. 93 at 1.) Moreover, to the extent that Eagle has asserted a claim against Linder for indemnification (*see* R. Doc. 100 at ¶¶ V-VI), the drilling contract expressly provides that Tetra Applied shall have no defense or indemnification obligation. (*See* R. Doc. 75-3 at 25 § 910(c).) For these reasons, the Court finds that Tetra Applied is liable to Linder for the attorney's fees and costs incurred by

Linder in defending Pitre's claims.[2]

With respect to Linder's claim for the additional attorney's fees and costs it incurred while pursuing the indemnity claim against Tetra Applied, the relevant provision of the drilling contract provides:

> 1302. Attorney's Fees
>
> If this Contract is placed in the hands of an attorney for collection of any sums due hereunder, or suit is brought on same, or sums due hereunder are collected through bankruptcy or arbitration proceedings, then the prevailing party shall be entitled to recover reasonable attorney's fees and costs.

(R. Doc. 75-3 at 27.)  As explained above, the contract obligates Tetra Applied to pay Linder an amount equal to the costs Linder incurred while defending against Pitre's claims.  On February 22, 2007, before Pitre's claims against Linder were dismissed, Linder's attorney made a demand upon Tetra Applied's attorney for defense and indemnification.  (*See* R. Doc. 75-4 at 4.)  After Tetra Applied failed to respond, Linder filed the aforementioned third-party complaint.  Tetra Applied then filed an answer denying that it had any defense obligation under the contract.  (*See* R. Doc. 57 at ¶¶ 8-9.)  This, of course, spurred Linder to file the present motion for summary judgment.

---

[2] Tetra Applied also argues that there are disputed issues of fact with respect to the causes of Pitre's accident.  Tetra Applied does not explain how those issues have any bearing on Linder's indemnification claim, however, and the Court fails to see the connection.

Under the clear and unambiguous language of the drilling contract, Tetra Applied is liable to Linder for "reasonable attorney's fees and costs" incurred by Linder in its attempts to secure Tetra Applied's compliance with the indemnity provision. As discussed, the cost of defense and indemnity is a "sum due hereunder"--that is, under the drilling contract. Linder referred the indemnity matter to its attorney, who made attempts to "collect[]" the sum from Tetra Applied and then brought "suit" in the form of a third-party complaint. Finally, pursuant to this order, Linder is the "prevailing party." Tetra Applied does not dispute any of these findings or even discuss the attorney's fees clause. (*See* R. Doc. 89.) For these reasons, the Court finds that Tetra Applied is liable to Linder for reasonable attorney's fees and costs incurred by Linder in its attempts to secure Tetra Applied's compliance with the contractual indemnity obligation.[3]

### B.   Albert Bailey and Eagle Consulting's Motion for Summary Judgment

Bailey and Eagle argue that Pitre's claims against them are time-barred under the applicable statute of limitations. Though

---

[3] Such costs include any attorney's fees charged for informal attempts to secure compliance, court costs related to the third-party complaint and the motion for summary judgment, and attorney's fees related to the third-party complaint and motion for summary judgment.

the complaint is not entirely clear, it appears that Pitre may have desired to assert claims for negligence, unseaworthiness, and maintenance and cure against all the named defendants. Of course, a seaman may not directly recover maintenance and cure or damages for unseaworthiness from third parties who are not the shipowner, the operator of the vessel, or the seaman's employer. *See Complaint of Liberty Seafood, Inc.*, 38 F.3d 755, 758 (5th Cir. 1994); *Guidry v. Continental Oil Co.*, 640 F.2d 523, 530 (5th Cir. 1981). Because it appears to be undisputed that Bailey and Eagle were not the owners or operators of the TETRA RIG NO. 8, nor were they Pitre's employers, the Court will construe the complaint to state only a claim for negligence against Bailey and Eagle.

Pitre's negligence claim against Bailey and Eagle arises under the general maritime law.[4] It is thus time-barred unless it was commenced "within three years from the day the cause of action arose." 46 U.S.C. § 30106. Under the rule applied in maritime cases, the cause of action accrued when Pitre "had a reasonable opportunity to discover his injury, its cause, and the link between the two." *Crisman v. Odeco, Inc.*, 932 F.2d 413, 415 (5th Cir. 1991). In this case, all the parties agree that the

---

[4] Though Pitre has claimed seaman status, a seaman's claims for negligence against parties other than his employer are governed by general maritime law rather than the Jones Act. *See* THOMAS J. SCHOENBAUM, ADMIRALTY AND MARITIME LAW § 6-15 (4th ed. 2004).

-10-

limitations period for Pitre's claims began to run on the date of the accident, August 28, 2004.  Though Pitre filed his original complaint on August 22, 2006, he did not assert claims against Eagle and Bailey until April 16, 2008, more than three years after the accident.  His claims will thus be time-barred unless they relate back to the original complaint.

The standard for determining when an amended complaint relates back to an original complaint is set forth in Federal Rule of Civil Procedure 15.  That rule authorizes relation back only under certain circumstances:

> An amendment to a pleading relates back to the date of the original pleading when:
>
> ...
>
> (C) the amendment changes the party or the naming of the party against whom a claim is asserted, if Rule 15(c)(1)(B) is satisfied and if, within the period provided by Rule 4(m) for serving the summons and complaint, the party to be brought in by amendment:
>
> (i) received such notice of the action that it will not be prejudiced in defending on the merits; and
>
> (ii) knew or should have known that the action would have been brought against it, but for a mistake concerning the proper party's identity.

FED. R. CIV. P. 15(c)(1)(C).  Thus, when an amended complaint adds claims against a newly named party, three conditions must be met in order for the new claims to relate back to the original complaint: (1) the new claims must arise out of the same circumstances asserted in the original pleading, (2) the new party must have received notice of the pendency of the action

-11-

within 120 days of the filing of the original complaint, (3) the new party must or should have known that, but for a mistake concerning the identity of the proper party, suit would have been brought against it.  *Skocylas v. Federal Bureau of Prisons*, 961 F.2d 543, 545 (5th Cir. 1992) (*citing Schiavone v. Fortune*, 477 U.S. 21, 29 (1986), *superseded by rule as recognized in Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998)).

Because Pitre has the ultimate burden of showing that the new claim relates back to the original complaint, *see Dodson v. Hillcrest Securities Corp.*, 95 F.3d 52, 1996 WL 459772 at *10 (5th Cir. 1996) (unpublished), Bailey and Eagle can satisfy their burden on summary judgment merely by pointing out that the evidence in the record contains insufficient proof concerning one of the elements described above.  *See Celotex*, 477 U.S. at 325; *see also Lavespere*, 910 F.2d at 178.  Here, Bailey and Eagle have argued that there is no evidence to indicate that they received notice of the action within 120 days of the filing of the complaint or that they knew or should have known that they would have been named as defendants, but for a mistake relating to identity.  In order to prevail on summary judgment, Pitre must therefore set out specific facts, based upon evidence in the record, showing that a genuine issue exists as to each of these requirements.  *See Celotex*, 477 U.S. at 324; *see also Montgomery v. U.S. Postal Service*, 867 F.2d 900, 904 (5th Cir. 1989).

Here, Tetra Applied and Tetra Tech, arguing on behalf of

Pitre, have said that they are "informed and believe[] that Linder or its counsel contacted Bailey and/or Eagle Consulting and apprised those parties of the pendency of this action and of the claims asserted by Mr. Pitre ... ." (R. Doc. 103 at 5.) This unsworn assertion is not enough to create a genuine issue of material fact with respect to actual notice. Tetra Applied and Tetra Tech have neither referred to nor submitted any evidence in support of their claim. Moreover, even if the Court were to give credence to their unsupported assertion, the Tetra parties have neither alleged nor pointed to evidence to demonstrate that Bailey and Eagle received the required notice within the applicable 120-day period.

Tetra Applied and Tetra Tech also argue that the Court should infer notice based on an alleged identity of interest between Bailey, Eagle, and Linder. In the Fifth Circuit, courts "will infer notice if there is an identity of interest between the original defendant and the defendant sought to be added or substituted." *Jacobsen v. Osborne*, 133 F.3d 315, 320 (5th Cir. 1998). "Identity of interest generally means that the parties are so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Id.* (quoting *Kirk v. Cronvich*, 629 F.2d 404, 408 n.4 (5th Cir. 1980)).

In *Jacobsen*, the plaintiff originally sued the city of New Orleans and one of its police officers. *Id.* at 317. He later

moved to substitute two new officers for original one because he discovered that he was mistaken as to the identity of the arresting officer. *Id.* at 317-18. The Fifth Circuit found a sufficient identity of interest between the original officer and the substituted officers. The original complaint was served on the city's attorney, who would have necessarily represented all of the officers in any litigation. *Id.* at 320. The court found that because the city's attorney would have given notice to the newly-named officers when he investigated the allegations in the complaint on behalf of the city, the officers had sufficient notice of the action to satisfy Rule 15(c). *Id.*

There is no evidence that Bailey, Eagle, and Linder share a similar identity of interest in this case. Tetra Applied and Tetra Tech have not alleged, nor does the record indicate, that Bailey and Eagle have the same counsel as Linder. And though Tetra Applied and Tetra Tech correctly point out that Eagle was working as Linder's contractor on the TETRA RIG NO. 8 at the time of the accident, nothing in the record supports the contention that the two companies were "so closely related in their business operations or other activities that the institution of an action against one serves to provide notice of the litigation to the other." *Jacobsen*, 133 F.3d at 320. In contrast to other cases finding an identity of interest, there is nothing to indicate that Eagle and Linder have a parent-subsidiary relationship, share a substantial number of corporate officers or directors, or

-14-

are otherwise closely connected in their business operations. *Compare Gifford v. Wichita Falls & So. Ry. Co.*, 224 F.2d 374, 376-77 (5th Cir. 1955); *Travelers Indem. Co. v. United States*, 382 F.2d 103, 106 (10th Cir. 1967). *See also Bailey v. United States*, 289 F. Supp. 2d 1197, 1208 (D. Haw. 2003) ("Contractual relationships, by themselves, are insufficient to demonstrate a community of interest justifying an imputation of knowledge.").

The strongest evidence suggesting an identity of interest is a provision of the contract between Eagle and Linder that requires Linder to "notify [Eagle] immediately of any claim, demand, or suit that may be presented to or served upon it by any person or entity arising out of or as a result of work performed pursuant hereto ... ." (R. Doc. 27-13 at 2.) As noted, however, the Tetra parties have not pointed to any evidence that Eagle received notice pursuant to this provision or that the notice was provided within 120 days after the original complaint was filed. In the absence of such proof, the Court declines to assume that Eagle received the requisite notice of the potential claims against it.

In addition to their relation-back argument, Tetra Applied and Tetra Tech argue that the statute of limitations must be tolled during the pendency of the suit against Linder. (R. Doc. 103 at 5-6.) To support their argument, they cite a single district court case from 1962. *See Melancon v. Travelers Ins. Co.*, 209 F. Supp. 68 (W.D. La. 1962). In that case, however, the

court erroneously applied a Louisiana limitations statute to a federal maritime cause of action.[5] *See* LA. CIV. CODE art. 1799 (formerly art. 2097); *Melancon*, 209 F. Supp. at 72. As the Tetra parties have already recognized, federal law, not state law, governs the limitations period for maritime torts. *See Waguespack v. Aetna Life & Cas. Co.*, 795 F.2d 523, 527 (5th Cir. 1986) ("We find no merit in Waguespack's ... argument that exposure to solidary liability under Louisiana law suspends the running of a federal statute of limitations ... ."); *see also Mendez v. Ishikawajima-Harima Heavy Industries Co., Ltd.*, 52 F.3d 799 (9th Cir. 1995) (holding that the admiralty statute of limitations controls in a diversity action for a maritime tort). Tetra Applied and Tetra Tech have cited no federal statute or doctrine requiring that the admiralty statute of limitations be tolled when an action involves joint tortfeasors or joint debtors. The Court therefore finds that the tolling argument has no application to the present case.

For these reasons, summary judgment must be granted with respect to Pitre's negligence claim against Bailey and Eagle.

## IV.  CONCLUSION

For the foregoing reasons, the Court GRANTS Linder's motion

---

[5] Another case cited by the Tetra parties recognized this error. *See People of the Living God v. Star Towing Co.*, 289 F. Supp. 635, 639 n.6 (E.D. La. 1968).

for summary judgment and GRANTS Bailey and Eagle's motion for summary judgment.

New Orleans, Louisiana, this <u>6th</u> day of November, 2008.

_____
SARAH S. VANCE
UNITED STATES DISTRICT JUDGE